UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CASSIE P.,

                              Plaintiff,

        v.                                        6:17-CV-0857

                                             (TWD)

COMM'R OF SOC. SEC.,

                              Defendant.
_____

APPEARANCES:                            OF COUNSEL:

OFFICE OF PETER M. HOBAICA, LLC      B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee Street
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.         ARIELLA R. ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**<u>DECISION and ORDER</u>**

      Currently before the Court, in this Social Security action filed by Cassie P. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion

for judgment on the pleadings.  (Dkt. Nos. 11 and 12.)  For the reasons set forth below,

Plaintiff's motion for judgment on the pleadings is denied and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

      Plaintiff was born in 1983, making her 25 years old at the alleged onset date and 30 years

old at her date last insured.  Plaintiff reported completing the twelfth grade.  She has previous

work as a home attendant/caregiver and waitress/cook.  At the initial application level, Plaintiff alleged disability due to nerve damage in her back, left leg numbness and weakness, anxiety, seizure-like episodes, and tremors.

### B.    Procedural History

Plaintiff applied for a period of disability and Disability Insurance Benefits on May 19, 2014, alleging disability beginning on March 15, 2009.  Her application was initially denied on June 27, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  She appeared at two hearings before ALJ Marie Greener on December 21, 2015, and August 17, 2016.  (T. 51-93.) [1]  On September 14, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 18-35.)  On July 14, 2017, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

The ALJ made the following seven findings of fact and conclusions of law.  (T. 23-30.) First, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2013.  (T. 23.)  Second, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 15, 2009, through her date last insured.  (T. 23.)  Third, the ALJ found, through the date last insured, Plaintiff's sacroiliitis, mild lumbar degenerative disc disease ("DDD"), lumbar disc bulges, myofascial pain syndrome, depression and anxiety were severe impairments.  (T. 23-24.)  Fourth,

---

[1]    The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 24-25.) The ALJ considered Listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id*.) Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work:

> She can lift and carry 10 pounds occasionally and less than 10 pounds frequently. She can sit a total of at least 6 hours in an eight-hour workday, with customary breaks; however, she needs to change position from sitting to standing after about 45 minutes, for a brief time of about 5 minutes. She does not have to leave the workstation during the change in position. She can stand or walk a maximum of 2 hours in an eight-hour workday, but for no more than 30 minutes at a time. In addition, she must perform routine daily tasks in the same location with no significant change in pace on a daily basis.

(T. 25.) Sixth, the ALJ found Plaintiff was unable to perform any past relevant work. (T. 28.) Lastly, the ALJ found there were jobs existing in significant numbers in the national economy Plaintiff could have performed. (T. 29.) The ALJ therefore concluded Plaintiff was not disabled.

### D.    The Parties' Briefings on Their Cross-Motions

#### 1.    Plaintiff's Motion for Judgment on the Pleadings

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. (Dkt. No. 11 at 2-3, 14-28.[2]) First, Plaintiff argues the ALJ erred in failing to find she was disabled prior to her date last insured because the ALJ erroneously failed to give controlling weight to the opinion of treating physician Muthu Ramasamy, M.D. (*Id*. at 14-18.) Plaintiff

---

[2]    Page references in citations to the parties' briefs refer to the page numbers inserted by the Court's electronic filing system maintained by the Clerk's Office.

contends the ALJ failed to give good reasons as to why she did not afford controlling weight to Dr. Ramasamy's opinion which indicated Plaintiff's multiple spinal impairments and resultant symptoms gave her an RFC precluding all work beginning in 2013, and substituted her own view of the medical evidence for Dr. Ramasamy's opinion.  (*Id*. at 15, 17-18.)  Plaintiff notes the ALJ's two reasons, including (a) Dr. Ramasamy did not begin treating Plaintiff until May 2014 and (b) his assessed limitations were not consistent with the objective evidence of record, for affording Dr. Ramasamy's opinion only limited weight are grossly insufficient.  (*Id*. at 15-16.)  Plaintiff contends the fact that Dr. Ramasamy did not begin treating her until May 2014 is irrelevant because his retrospective opinion is allowed by SSA regulations and fully supported by the medical evidence.  (*Id*.)  Additionally, the ALJ failed to explain why certain limitations relating to sitting, lying down, and reaching opined by Dr. Ramasamy were rejected.  (*Id*. at 17-18.)  Plaintiff also points out there is no consultative examination from either before or after the date last insured and Dr. Ramasamy's opinion is the only medical opinion of Plaintiff's physical limitations.  (*Id*.)

Next, Plaintiff argues the ALJ failed to properly evaluate the medical evidence pertaining to Plaintiff's physical and mental impairments.  (*Id*. at 18-22.)  Specifically, the ALJ cherry-picked the evidence to support her overall finding of no disability, recited medical evidence without discussing it or how it supported her RFC finding, and made false statements regarding the evidence in support of her findings.  (*Id*.)

Third, Plaintiff argues the ALJ mischaracterized and inaccurately summarized her hearing testimony and statements concerning her limitations and symptoms.  (*Id*. at 22-26.)  According to Plaintiff, the ALJ also cherry-picked Plaintiff's reports of her activities of daily

living and ignored Plaintiff's other statements regarding her disabling symptoms and greater limitations on her activities of daily living.  (*Id*.)

Lastly, Plaintiff argues the ALJ erred in purporting to afford considerable weight to the opinion of treating nurse practitioner ("NP") Jennifer Walther, FNP-C, yet failing to explain why none of NP Walther's opined marked limitations in three areas of basic mental demands precluded Plaintiff from work.  (*Id*. at 26-28.)  Plaintiff contends the ALJ failed to explain why NP Walther's opined limitations, which include marked limitations in interacting appropriately with the public and coworkers and responding appropriately to usual work situations and changes in a routine work setting, did not merit a finding of disability.  (*Id*. at 26-27.)  Plaintiff also argues the ALJ erred in stating her assessed social limitations were not present prior to the date last insured based on Plaintiff's reports of extensive social activities prior to the date last insured.  (*Id*. at 27-28.)

## 2.    Defendant's Motion for Judgment on the Pleadings

Defendant makes four arguments in support of her motion for judgment on the pleadings. (Dkt. No. 12 at 2, 4-22.)  First, Defendant argues the ALJ properly considered Dr. Ramasamy's opinions from June 2015 and February 2016 in accordance with the regulations, concluding that they were not consistent with the evidence of record and entitled to little weight.  (*Id*. at 7-13.) Defendant points out the ALJ noted Dr. Ramasamy's opinions were inconsistent with treatment notes from NP Walther, treatment notes from pain management specialist Emily DeSantis, D.O., and Plaintiff's reported activities, and his opinions did not establish limitations dating back to 2013 because he only began treating Plaintiff in May 2014, nearly six months after Plaintiff's date last insured.  (*Id*. at 8-13.)  According to Defendant, a treating source's retrospective assessment is not conclusive, nor entitled to controlling weight, where it is contradicted by other

medical evidence or overwhelmingly compelling non-medical evidence.  (*Id*. at 12.)  Defendant also contends the ALJ reasonably concluded Dr. Ramasamy's opinions were inconsistent with Plaintiff's reports that treatment helped relieve her pain.  (*Id*. at 11.)  Dr. Ramasamy's treatment notes also do not fully support his opinion and the record shows Plaintiff's condition deteriorated after her date last insured.  (*Id*. at 11-13.)

Second, Defendant argues substantial evidence supports the ALJ's RFC determination.  (*Id*. at 13-19.)  Contrary to Plaintiff's arguments, Defendant contends the ALJ did not ignore or disregard evidence of Plaintiff's back pain and associated symptoms during the relevant period, but the ALJ acknowledged Plaintiff underwent various forms of treatment and accounted for her limitations and allegations by limiting her to a reduced range of sedentary work.  (*Id*. at 13-15.)  Even evidence post-dating the relevant period by two years supports the ALJ's nuanced and detailed RFC finding.  (*Id*. at 15.)

Defendant additionally argues the ALJ properly assessed Plaintiff's mental symptoms and limitations throughout the relevant period, reasonably concluding the record did not contain evidence of disabling symptoms or limitations.  (*Id*. at 15-19.)  Defendant notes the ALJ found Plaintiff's depression and anxiety to be severe impairments, acknowledged her impairments dated back to the relevant period and interfered with her ability to perform work activity, and considered evidence of her depression and anxiety throughout the relevant period.  (*Id*. at 16-17.)  Contrary to Plaintiff's arguments, the ALJ evaluated and discussed the records pertaining to her mental health during the relevant period because the ALJ noted Plaintiff had an exacerbation of depressive symptoms and began seeing a psychiatrist in March 2010, experienced a decrease in symptoms shortly thereafter, and then reported to NP Walther in July 2011 she had stopped attending counseling and taking medication.  (*Id*. at 17.)

Regarding NP Walther's opinion, Defendant contends NP Walther noted Plaintiff had "ups and downs" over the years and therefore did not state her symptoms were consistent from 2011 through 2016. (*Id.* at 17-18.) NP Walther noted Plaintiff had been diagnosed with depression and anxiety in 2011, but did not state her opinion regarding Plaintiff's limitations dated back to 2011. (*Id.*) Defendant also notes NP Walther acknowledged medication had been somewhat effective overall in managing Plaintiff's symptoms and found she was only mildly limited in performing simple work and making simple work-related symptoms. (*Id.* at 18.) The ALJ noted that the assessed social limitations were not present prior to the date last insured and only manifested after the close of the relevant period. (*Id.*)

Third, Defendant argues substantial evidence supports the ALJ's credibility determination. (*Id.* at 19-21.) Defendant contends the ALJ did not rely solely on the lack of objective clinical evidence to conclude Plaintiff's testimony was not fully credible, but rather considered other factors including Plaintiff's reported activities, her responsiveness to treatment, and the consistency of her statements throughout the record. (*Id.*)

Lastly, Defendant argues Plaintiff has not established that she was disabled, but rather disagrees with the ALJ's assessment of the record and therefore remand is not warranted. (*Id.* at 21-22.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

**III.    ANALYSIS**

**A.      Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence
         and Plaintiff's RFC**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R.

§ 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of

the impairment is given 'controlling weight' so long as it is 'well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)

(quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations

where the treating physician's opinion is not entitled to controlling weight, in which case the

ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  The factors

for considering opinions from non-treating medical sources are the same as those for assessing

treating sources, with the consideration of whether the source examined the claimant or not

replacing the consideration of the treatment relationship between the source and the claimant.  20

C.F.R. §§ 404.1527(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . .

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis.'"  *Pardee v. Astrue*, 631 F. Supp. 2d

200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)).  "In

making a residual functional capacity determination, the ALJ must consider a claimant's

physical abilities, mental abilities, symptomology, including pain and other limitations which

could interfere with work activities on a regular and continuing basis."  *Pardee*, 631 F. Supp. 2d

at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations

created by an individual's response to demands of work . . . must be reflected in the RFC

10

assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at \*3 (N.D.N.Y.

Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at \*8).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider*

*v. Colvin*, 15-CV-6517, 2016 WL 5334436, at \*5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg*

*v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005)).  "The ALJ is not permitted to substitute

his own expertise or view of the medical proof for the treating physician's opinion or for any

competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131).  In

assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-

examining State agency medical consultants because these consultants are qualified experts in

the field of social security disability.  *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d

Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert

opinion evidence which can be given weight if supported by medical evidence in the record.");

*Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at \*9 (N.D.N.Y. Mar. 26, 2015)

("State agency physicians are qualified as experts in the evaluation of medical issues in disability

claims.  As such, their opinions may constitute substantial evidence if they are consistent with

the record as a whole.") (internal quotation marks omitted).  The RFC determination "must be set

forth with sufficient specificity to enable [the Court] to decide whether the determination is

supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

In June 2015, Dr. Ramasamy indicated Plaintiff was unable to work due to severe back

issues and noted diagnoses including fibromyalgia, anxiety, facet degenerative joint disease, and

DDD.  (T. 398-99.)  He also opined Plaintiff was very limited in lifting, carrying, pushing,

pulling and bending, and moderately limited in walking, standing, sitting, using her hands, and

using stairs or doing other climbing.  (T. 398.)  In February 2016, he indicated he treated

11

Plaintiff between May 2014 and June 2015, noting low back pain with an MRI showing lumbar spine DDD and facet arthropathy. (T. 526.) He diagnosed DDD, fibromyalgia, displacement of a lumbar intervertebral disc, and thoracic facet arthropathy and noted treatment included radiofrequency neurolysis in the lumbar spine and sacroiliac joint with poor response to treatment, but a fair prognosis. (*Id.*)

Dr. Ramasamy opined Plaintiff could occasionally lift and carry up to 10 pounds, sit for 40 minutes at a time for a total of two hours in an eight-hour workday, stand for 30 minutes at a time for a total of two hours, and walk for 20 minutes at a time for a total of one hour (lying down the rest of the eight hours); she could occasionally reach and push/pull and frequently handle, finger and feel, occasionally use her feet for operation of foot controls, occasionally climb stairs and ramps; she could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl, and never tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold/heat, or vibrations. (T. 528-31.) He noted she occasionally used a cane to ambulate, but it was not medically necessary and opined she could not travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, climb a few steps at a reasonable pace with the use of a single handrail, or sort, handle or use paper/files. (T. 528, 532.) He indicated these limitations were first present in 2013. (T. 532.)

The ALJ afforded no weight to Dr. Ramasamy's June 2015 statement that Plaintiff was unable to work due to severe back issues because it reached a conclusion on an issue reserved to the Commissioner. (T. 27, 398.) The ALJ summarized Dr. Ramasamy's limitations from June 2015 and February 2016, affording them limited weight because the doctor specified he did not begin treating Plaintiff until May 2014, which was several months after her date last insured. (T.

27, 398-99, 526-32.)  The ALJ elaborated that Dr. Ramasamy had therefore not observed Plaintiff during the period relevant to her appeal and, moreover, his assessed limitations were not consistent with the objective evidence of record.  (*Id*.)  The ALJ also noted Plaintiff did not allege she had to lie down for several hours in a day and the only source to have treated her since before her date last insured, NP Walther, did not suggest Plaintiff had any postural, environmental or reaching limitations.  (T. 27-28.)

In August 2016, NP Walther indicated she had been treating Plaintiff since July 2011 and noted Plaintiff had suffered from depression and anxiety since 2011.  (T. 898.)  She diagnosed those mental conditions, noting Plaintiff had been treated with various medications over the years including Cymbalta, Paxil, Lexapro, and Xanax with a fair response to treatment, having had ups and downs, but the "medication [was] overall somewhat effective".  (*Id*.)  She opined Plaintiff had a mild limitation in the ability to make judgments on simple work-related decisions, a moderate limitation in the ability to interact appropriately with supervisors, and marked limitations in the abilities to interact appropriately with the public and coworkers and respond appropriately to usual work situations and changes in a routine work setting.  (T. 900.)  She indicated the opined limitations were first present in 2011.  (*Id*.)

The ALJ afforded considerable weight to NP Walther's opinion based on the length and nature of treatment.  (T. 28, 898-901.)  Although this opinion could not be granted controlling weight because NP Walther was not an acceptable medical source, the ALJ noted it was considered in accordance with SSR 03-6p.  (*Id*.)  However, the assessed social limitations were not present prior to the date last insured but rather manifested much later and Plaintiff reported extensive social activities prior to the date last insured.  (T. 28, 533-36.)

Plaintiff argues the ALJ failed to properly consider the opinions of Dr. Ramasamy and NP Walther and properly evaluate the medical evidence pertaining to Plaintiff's physical and mental impairments, rendering the RFC determination unsupported by substantial evidence. (Dkt. No. 11 at 14-22.)  The Court finds these arguments unpersuasive for the following reasons.

First, the Court's review of the ALJ's decision and the evidence of record do not support Plaintiff's contentions that the ALJ impermissibly cherry-picked the evidence, ignored evidence pertaining to Plaintiff's mental and physical limitations, or substituted her own opinion for that of competent medical opinion.  The ALJ's overall decision, including her RFC analysis, indicates a detailed review of the evidence including Plaintiff's testimony and reports, her treatment records, and the medical opinions of record.  (T. 26-28.)  The ALJ adequately summarized the evidence of record and noted she had considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and SSR 96-4p; she noted she had also considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  (T. 25.)  She explicitly discussed and weighed Dr. Ramasamy's opinion and NP Walther's opinion in addition to the opinions of Michael Quinn, PT, and the state agency medical consultant at the initial determination, M. Totin.  (T. 27-28.)

Second, the ALJ properly considered Dr. Ramasamy's opinion and provided sufficient reasons for the weight she afforded to it.  (T. 27-28.)  Namely, the ALJ reviewed the totality of the evidence before her and concluded Dr. Ramasamy's opined limitations were not consistent with that evidence.  (T. 26-27.)  Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician.  *See Saxon v.*

14

*Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the

record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d

357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007)

(noting that an ALJ may reject an opinion from a treating physician "upon the identification of

good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v.

Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. § 404.1527(c)(4) (indicating that the extent

that an opinion is consistent with the record as a whole is one of the factors considered when

determining the amount of weight to which an opinion is entitled).

Third, the ALJ properly considered NP Walther's opinion and provided sufficient reasons

for the weight she afforded to it. (T. 28.) Notably, the ALJ acknowledged NP Walther's status

as a long-time treating but non-acceptable medical source whose opinion could not be granted

controlling weight. (*Id.*) The ALJ's decision also makes clear that, based on her review of the

totality of the evidence, NP Walther's assessed limitations were not present during the relevant

period. (*Id.*)

Further, it is within the ALJ's purview to weigh the evidence of record and resolve any

conflicts therein. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7

(N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and

resolve material conflicts where sufficient evidence provides for such."); *accord Petell v.

Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21,

2014). This Court will not now reweigh that evidence. *See Warren v. Comm'r of Soc. Sec.*, 15-

CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying

the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not

reweigh the evidence presented at the administrative hearing . . . nor will it determine whether

[the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (*Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016)) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

For the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence. Remand is therefore not required on this basis.

**B.      Substantial Evidence Supports the ALJ's Credibility Determination**

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll*, 705 F.2d at 642; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has

the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 26.) Plaintiff argues the ALJ failed to properly consider her credibility because the ALJ cherry-picked the evidence, ignored other evidence regarding her disabling symptoms and activities of daily living, and mischaracterized and inaccurately summarized her hearing testimony and statements. (Dkt. No. 11 at 22-26.) The Court disagrees.

The Court's review of the ALJ's overall decision indicates she adequately reviewed and summarized Plaintiff's testimony and reports as well as the medical evidence. (T. 26-28.) In so doing, the ALJ indicated the objective evidence of record failed to support the level of severity alleged by Plaintiff, including the MRIs of record, treatment notes, and Plaintiff's sporadic treatment attendance since there were no visits from October 2011 to August 2012 for back pain complaints. (T. 26, 336, 383-84, 403, 414.) While Plaintiff reported being bedridden for most of her pregnancy in 2013, she reported to a treating source that she was on her feet all day during that time. (T. 26, 828.) Although Plaintiff had received various forms of treatment for her allegedly disabling symptoms, which would normally weigh somewhat in her favor, the record also revealed that treatment had been generally successful in controlling those symptoms. (T. 26.) The ALJ pointed out Plaintiff's multiple injections, with subsequent report to her treating source that she continued to be satisfied with her right-sided pain relief. (T. 26, 428-86.)

The objective evidence of record also failed to support the level of severity alleged with regard to Plaintiff's psychiatric problems, noting she began attending counseling in 2010 after becoming depressed relating to discord in her marriage and her subsequent report that her level of stress was reduced and things were going well during her divorce. (T. 26, 453.)

Further, Plaintiff described daily activities that were not limited to the extent one would expect and she stopped taking all psychiatric medications for a time in 2011. (T. 27, 231-44, 428-86.) Such daily activities included caring for Plaintiff's pets and her personal needs, preparing simple meals, doing some laundry and washing some dishes, driving a car and going out alone, shopping in stores and managing finances, knitting, playing with her kids, taking short walks, and spending time with others at gatherings. (T. 27.) Plaintiff denied having problems paying attention and reported she could follow both spoken and written instructions. (T. 27, 231-44.) The ALJ further noted Plaintiff's activities required many of the same functions she alleged she was unable to perform in a work setting. (T. 27.)

While Plaintiff reported having help with her children at the first administrative hearing and indicated her mother and husband did most of the household chores, the Court's review does not support Plaintiff's contention that the ALJ erroneously mischaracterized her testimony or reports. (T. 60, 63-64.) Again, the Court notes it is the ALJ's job to weigh the evidence of record, resolving any conflicts therein, and the Court will not reweigh that evidence now. *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10; *Warren*, 2016 WL 7223338, at *9; *Vincent*, 830 F. Supp. at 133.

The Court finds the ALJ provided sufficient reasons for her credibility determination with adequate explanation, enabling this Court to conduct meaningful review and conclude the ALJ's analysis is supported by substantial evidence. *See Booker v. Astrue*, 07-CV-0646 (GLS), 2011

18

WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).  Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:  September 5, 2018
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge